[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Lake Garda Improvement Association, is an association of owners of cottages and dwellings, or other real estate within the limits and territory of Farmington and Burlington, as set out in House Bill No. 992, as amended (hereinafter "Charter"). The co-plaintiff, Rosemary McGuire, is an owner of real estate within the Lake Garda territorial limits set out in the Charter.
The defendant, Lake Garda Water Company, Inc. (hereinafter "Water Co."), is the owner and possessor of real estate known as Lot No. 1 with improvements thereon including a dam and piping and valves; and that land abutting the dam on the south which contains the waters of Lake Garda.
The plaintiffs are proceeding in the second count of their complaint. The first count has been withdrawn.
The plaintiff association seeks to condemn the properties of the defendant, i.e., Lot No. 1 upon which is located a dam, and the separate area of Lake Garda. The plaintiffs contend that the dam and impounded waters of Lake Garda are endangered because of the failure of the defendant to provide urgently required repairs to the dam. That the failure to provide the dam repairs will result in loss of the waters forming Lake Garda to the serious detriment of the association and its members.
The complaint is in the nature of a petition to enforce sections 7 and 8 of the plaintiffs' Charter which grants to the association the right to the involuntary taking of real property within the area set out in the Charter as being within the plaintiffs jurisdictional rights.
The court finds that the plaintiff, Lake Garda Improvement Association is organized and has certain powers under its Charter issued as Special Act 992 by the Connecticut General Assembly. That within its Charter, specifically sections 7 and 8, authority has been granted for the condemnation, or involuntary taking of real estate within the jurisdictional area of the association. CT Page 9081 That the defendant Water Company is the owner and possessor of a certain Lot No. 1 on which a dam is situated, which impounds the waters of Lake Garda. That the dam incorporates a spill way for overflow of excess water as well as a pipe and valve system which permits draining the waters of Lake Garda. That the dam is a key and critical factor in sustaining the existence of Lake Garda. That the association and its members have developed a community around Lake Garda for recreational and aesthetic purposes; that, these aesthetics and recreational facilities resulting from the lake contributes substantially to the monetary value of the members' properties. That the dam is in such a serious state of disrepair that the impounded waters of Lake Garda may be caused to be released to the serious detriment and damage to the association.
The parties have had ongoing discussions for the transfer of the defendant's premises to the association. That these discussions have not been fruitful. That the defendant Water Company is aware of the need of repairs to the dam. That without the needed dam repairs the impounded waters of Lake Garda will drain away. That without the water in the lake the central focus of the Lake Garda community will be dissipated. That the recreational appeal of the lake will be gone. That Lake Garda without its waters will be reduced to a muddy lake bottom.
The defendant is and has been aware through its discussions with the association and through the correspondence between them of the plaintiffs urgent desire to obtain title to and possession of the defendant's premises so that the repairs to the dam can proceed without delay.
Further, the plaintiff association had appointed it's disinterested party and requested the defendant Water Company to also appoint a disinterested party so that damages could be assessed for the taking of the defendant's property. This action by the association is in accordance with the said Sections 7 and 8 of the Charter.
The Water Company has not appointed it's disinterested party to the three member panel to hear evidence and determine the damages resulting from the plaintiffs' association taking of the defendant's property.
The Water Company contends that the appointment by the association does not conform to the Charter's requirement of a CT Page 9082 disinterested party, in that the association's appointee, a professional appraiser, was hired by the association to appraise the premises being taken. That since he has made a determination as to the valuation to be placed on the premises to be taken, by definition he is not a disinterested party contemplated by the Charter. The court agrees that the association's appointment is not a disinterested party for the purposes set out in the Charter.
The Water Company also questions the association's condemnation authority under the Charter as well as the procedural steps in any such taking.
Thus, there has been adequate notice to the defendant Water Company that the plaintiff association contemplated condemnation proceedings to acquire the defendant's premises.
The procedural steps set out in the Charter requires that the association inform the defendant Water Company of the "taking" of the property as the first step in the acquisition of the property (dam and lake). The parties then are to agree upon a valuation for the premises. Where no agreement is reached the Charter calls for a three member panel to be named to determine damages. This is to be accomplished by the plaintiff association to formally name it's disinterested party to be one of the three member hearing panel. Thereupon the defendant Water Company is to name it's disinterested party to the panel. At which time the two named disinterested parties are to appoint the third member of the panel. Upon the naming of the full three member panel it is to proceed to hear the parties and their evidence and to determine the damages suffered by the defendant Water Company resulting from the plaintiff associations taking of the defendant's property.
The court after hearing the evidence presented by the parties, as well as examining the exhibits and applying the applicable laws; finds, that Sections 7 and 8 of the Charter grants the authority to the association to condemn real property within the association's jurisdictional boundaries. That the two parcels of land on which the dam and the lake are situated are within the association's jurisdictional boundaries; that, the association has the condemnational powers to take the two premises herein described.
The court further finds and orders that the taking as CT Page 9083 permitted under the Charter proceeds as follows:
The association is to name a disinterested party to the three member panel which will hear the parties and determine the damages suffered by the Water Company from the association's taking of the Water Company's property (The association's appointment of the member to the hearing panel is not to be the same person previous named by the association as he does not conform to the Charter's requirement of a disinterested party.)
The association is to notify the Water Company of it's appointee within fourteen (14) days of the date of this decision.
Upon being notified by the association of the appointment of its member to the hearing panel, the Water Company is to name its member to that panel, after which the two members will name the third panel member within fourteen (14) days after the naming of the defendant's panel member. At this time the panel is to be instructed by both counsel as to its duties. Thereupon the three member panel will proceed to conduct its hearings and determine the damages resulting to the Water Company from the takings by the association.
Upon making its determination as to damages, the panel is to notify the association's treasurer of that determination. The treasurer in turn is to immediately notify the Water Company of the panel's determination as to the damages.
Thereupon by payment of said amount of damages by the association to the Water Company, the title of the premises herein described shall vest in the association.
Therefore, the above described procedures for carrying out the taking of the Water Company's premises by the association is to be complied with by the parties as orders of the court.
Further, the defendant Water Company is not to take any actions that will affect the water level of Lake Garda during these taking proceedings.
Judgment may enter accordingly.
JULIUS J. KREMSKI JUDGE TRIAL REFEREE CT Page 9084